**IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MITSUBISHI TANABE PHARMA CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> APOTEX INC. and APOTEX CORP., <br><br> *Defendants*. | Case Action No. 25-16679-CCC-LDW |

**APOTEX DEFENDANTS' OPENING BRIEF IN SUPPORT OF
<u>THEIR MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ..................................................................................... 4

    A.    The Delaware Actions............................................................................... 5

    B.    The New Jersey Actions ........................................................................... 7

    C.    The Motions to Transfer ........................................................................... 7

III.  ARGUMENT................................................................................................................ 8

    A.    This Action Could Have Been Brought in Delaware.............................. 8

    B.    The First-Filed Rule Favors Transfer to Delaware ................................ 9

    C.    The Interests of Justice and Convenience are Best Served by Transfer to Delaware ................................................................................... 14

        1.    The balance of private interest factors weigh in favor of transfer ............ 15

        2.    The balance of public interest factors weigh in favor of transfer ............. 17

            (a)   The practical considerations that could make the trial easy, expeditious, or inexpensive weigh strongly in favor of transfer. ...................................................................... 18

            (b)   The relative administrative difficulty in the two fora favors transfer to Delaware. ........................................................ 22

            (c)   The remaining public interest factors are neutral. ........................ 23

        3.    The *Jumara* Factors Weigh in Favor of Transfer ..................................... 23

IV.   CONCLUSION............................................................................................................ 24

- i -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer Pharma AG, et al. v. Watson Labs, Inc. et al.*,
No. 14-2065 (D.N.J. Jun. 2, 2014)......................................................................................21

*COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*,
No. 09-6505, 2010 WL 2539692 (D.N.J. June 17, 2010)....................................................23

*Coyoy v. United States*,
526 F. Supp. 3d 30 (D.N.J. 2021) ......................................................................................10

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941)...............................................................................................10

*E.E.O.C. v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988)...............................................................................................10

*Eagle View Techs., Inc. v. GAF Materials, LLC*,
594 F. Supp. 3d 613 (D.N.J. 2022) ....................................................................................18

*Electronics for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005)..........................................................................................10

*Genentech, Inc. v. Eli Lily and Co.*,
998 F.2d 931 (Fed. Cir. 1993)............................................................................................10

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*,
502 F. App'x 201 (3d Cir. 2012) ........................................................................................13

*Intendis, Inc. v. River's Edge Pharm., LLC*,
No. 11-2838, 2011 WL 5513195 (D.N.J. Nov. 10, 2011) ...................................................16

*Job Haines Home for the Aged v. Young*,
936 F. Supp. 223 (D.N.J. 1996) ...........................................................................................9

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)......................................................................................... *passim*

*Magnacross LLC v. GE MDS LLC*,
No. 20-964, 2020 WL 6581530 (D. Del. Nov. 10, 2020).....................................................11

*Mahmoud v. Rite Aid Corp.*,
No. 11-06363, 2012 WL 3560645 (D.N.J. Aug. 16, 2012) ..................................................10

*Micron Tech., Inc. v. Mosaid Techs, Inc.*,
    518 F.3d 897 (Fed. Cir. 2008)................................................................................13

*Mitsubishi Tanabe Pharma Corporation v. Sandoz Inc.*,
    No. 25-16664 (D.N.J.) ..........................................................................................12

*Regents of the Univ. of California v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)...........................................................................19

*In re Samsung Electronics Co., Ltd.*,
    2 F.4th 1371 (Fed Cir. 2021) .........................................................................13, 20

*Shutte v. Armco Steep Corp.*,
    431 F.2d 22 (3d Cir. 1970)......................................................................................8

*Stewart v. First Student*,
    639 F. Supp. 3d 492 (E.D. Pa. 2022) ...................................................................15

*Tekno Prods., Inc. v. Glove Trends Inc.*,
    No. 19-91, 2019 WL 7184544 (D.N.J. Dec. 26, 2019)........................................12

*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
    No. 22-7528, 2023 WL 1883357 (D.N.J. Feb. 10, 2023) .............................. *passim*

*Vifor (Int'l) AG v. Apotex Inc.*,
    No. 25-211, Dkt. 32 (D. Del. Aug. 22, 2025) .........................................................9

*Yang v. Odom*,
    409 F. Supp. 2d 599 (D.N.J. 2006) .........................................................................8

**Statutes**

28 U.S.C. §§ 1331 and 1338(a)....................................................................................8

28 U.S.C. § 1400(b) .....................................................................................................9

28 U.S.C. § 1404(a) ...........................................................................................2, 8, 14

Hatch Waxman Act.......................................................................................................1

- iii -

## I.      INTRODUCTION

Defendants Apotex Inc. and Apotex Corp. (collectively "Defendants" or "Apotex") seek to have this case transferred to the District of Delaware where they have been actively litigating for a year-and-a-half against Plaintiff Mitsubishi Tanabe Pharma Corporation ("Plaintiff") on related patents covering the same drug product.

Since 2023, Plaintiff has been engaged in patent infringement litigation brought under the Hatch Waxman Act related to the drug product Radicava ORS® ("Radicava"). The active ingredient in Radicava is edaravone. Plaintiff initially filed suit against another of Apotex's co-defendants in the District of Delaware, Cipla Limited and Cipla USA, Inc. (collectively "Cipla"), in July 2023 on the three patents then-listed in the Orange Book for Radicava. Dkt. No. 1.[1] Over the next two years, Plaintiff would again and again choose Delaware as its venue of choice for litigation involving Radicava. This includes suing Apotex in May 2024 on the patents then-listed in the Orange Book for Radicava ORS (Dkt. No. 1, C.A. 1:24-cv-00549 (D. Del.) (JLH)); amending its Complaint in August 2024 to assert additional patents listed in the Orange Book relating to Radicava—one against Apotex and two against Cipla (Dkt. No. 92); suing Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively "Lupin") in December 2024 on the patents then-listed in the Orange Book for Radicava ORS (Dkt. No. 1, C.A. No. 1:24-cv-01423 (D. Del.) (JLH)); filing a second suit in Delaware against Lupin to assert one additional patent subsequently listed in the Orange Book for Radicava ORS in July 2025 (Dkt. No. 1, C.A. No. 1:25-cv-00828 (D. Del.) (JLH)); and, again, suing Cipla in July 2025 asserting one additional patent subsequently listed in the Orange Book related to Radicava (Dkt. No. 1, C.A. No. 1:25-cv-929 (D. Del.) (JLH)).

---

[1] Unless otherwise indicated all citations to docket entries herein are to the consolidated action in the District of Delaware, Civil Action No. 1:23-cv-759 (D. Del.) (JLH).

The parties have exchanged some document discovery, agreed to scheduling orders, engaged in repeated and prolonged negotiations to set: a trial date, limitations on discovery, the number of asserted claims and prior art references, and a protective order. Certain of the parties began claim construction in Delaware on then-pending patents and are days away from beginning that process again for all Delaware Defendants (Apotex, Lupin, and Cipla) and with the inclusion of the later-added patents. Judge Jennifer L. Hall and Magistrate Judge Christopher J. Burke have familiarized themselves with the case, the parties, and the issues during discovery hearings, proposed orders, and other submissions from the parties.

Then, after two years of litigation in Delaware—including a recently renegotiated scheduling order and the exchange of updated opening contentions—Plaintiff filed this suit in New Jersey on October 16 asserting additional patents covering the same Radicava drug product that it had repeatedly refused to add to the Delaware case. This case should be transferred to Delaware to be resolved alongside the long-pending action there related to the same Apotex ANDA and the same Radicava drug product. The analysis is straightforward.

First, all parties agree that Delaware is a proper destination for this case as it would have jurisdiction and be a proper venue for this matter. Second, both the Delaware case and this case involve the same parties and the same subject matter and, thus, transfer of this case to Delaware under the first-filed rule is warranted. Third, even if the Court declines to apply the first-filed rule, transfer is warranted under the relevant private and public interest factors when weighing a transfer under Section 1404(a). None of those factors favor denial of transfer. But at least judicial economy, the state of the respective courts' caseloads, and Defendants' preference of venue all support transfer.

Transfer is also appropriate on policy and fairness grounds. Plaintiff's actions since filing this suit make clear that it has engaged in sheer gamesmanship to manipulate these proceedings, nullify its prior choice of Delaware as its venue, and engage in forum shopping to this Court.

Days after this suit was filed, Plaintiff indicated that it intended to move to transfer the Delaware action to this Court and move to consolidate the actions to bring all eight patents at issue into one action in New Jersey. Plaintiff did so, filing its motion to transfer the Delaware action to this Court for consolidation on October 29. Dkt. No. 147. Bringing all patents into the same action is exactly what Apotex (and Cipla and Lupin) had requested from Plaintiff for months in the Delaware action. But Plaintiff refused. Instead, Plaintiff claimed there that two of the patents asserted in this action (the "Food Effect" Patents)[2] had too little overlap and the Delaware case was complex enough as is.

Despite that, Plaintiff's motion to transfer from Delaware makes clear that those reasons were pretextual excuses to preserve the two Food Effect patents at issue here as a hook with which to drag all Delaware litigation into this newly chosen forum. If successful, Plaintiff will likely reap a windfall in the form of yet another unnecessary delay in resolving the dispute and keeping Apotex's generic product off the market. At the least, it will force Apotex—as well as Cipla and Lupin—to expend substantial resources relitigating settled issues, and responding to new claims, theories, and discovery requests that Plaintiff agreed to forego in Delaware.

This sort of gamesmanship should not be countenanced and serves as an additional reason to grant Apotex's instant motion to transfer this case to Delaware where it can be efficiently decided alongside the long-pending consolidated case there, with the expertise and familiarity that

---

[2] Plaintiff identifies U.S. Patent Nos. 12,14,025 ("the '025 patent") and 12,310,946 ("the '946 patent")—which are asserted here against all three Delaware Defendants (Apotex, Lupin, and Cipla)—as the "Food Effect" Patents. Dkt. No. 147.

the parties, the Delaware Court, and local counsel have all developed with regard to the issues, technologies, and facts involved in these cases.[3] Accordingly, Apotex respectfully requests that this Court grant the motion to transfer this case to the District of Delaware.

## II.     FACTUAL BACKGROUND

Apotex is a leading provider of generic pharmaceutical products to customers around the world, including in the United States. In March 2024, Apotex submitted ANDA No. 219256 to the U.S. Food and Drug Agency ("FDA") seeking approval to market a generic version of the drug Radicava as listed in the FDA's Orange Book for Plaintiff's NDA 215446 (Edaravone Suspension 105 mg/5 ml). Dkt. Nos. 1 and 14 at ¶¶ 7, 11, and 41–45 (for both docket entries), C.A. No. 1:24-cv-549 (D. Del.) (JLH) (hereinafter the "Apotex Action"). Soon thereafter, Apotex served its Paragraph IV notice letter, dated March 22, 2024, on Plaintiff stating its intent to market a generic version of Radicava before expiration of the then-listed Orange Book patents: U.S. Patent Nos. 10,987,341 ("the '341 patent"); 11,241,416 ("the '416 patent"); 11,478,450 ("the '450 patent"); and 11,826,352 ("the '352 patent"). *Id*. at ¶ 46 (for both docket entries).

Plaintiff is the NDA holder for Radicava. Radicava is a drug product with edaravone as the active ingredient that is used to treat ALS. The form of Radicava at issue in the patents asserted in the cases discussed below is an oral suspension, which was purportedly an improvement over a prior form of Radicava that was an injectable product. The patents at issue largely relate to this purported improvement in formulating and administering an oral suspension and do not claim a new or improved form of the active ingredient.

---

[3] Counsel for Apotex understands that the other defendants with matters relating to Radicava patents pending in this District are also considering and/or intend to move to transfer their matters to Delaware as well, which, if granted, would result in a consolidated action there covering all parties and patents.

### A.    The Delaware Actions

Plaintiff filed suit against Apotex in the District of Delaware on May 3, 2024 alleging patent infringement of the '341, '416, '450, and '352 patents. Apotex Action, Dkt. No. 1, ¶¶ 1–2. Within days, on May 9, Plaintiff submitted U.S. Patent No. 11,957,660 ("the '660 patent") to the Orange Book for Plaintiff's Radicava NDA 215446. Not long thereafter, on July 18, 2024, Judge Hall ordered consolidation of the Apotex Action with the Cipla case (C.A. No. 1:23-cv-759 (D. Del. (JLH)), the latter of which became the lead matter "for all purposes up to and including trial." Dkt. No. 87. The consolidated matter in many respects had already proceeded through the initial phases of fact discovery and claim construction. Nonetheless, on August 30, 2024, roughly a month after consolidation, Plaintiff filed Amended Complaints against Cipla on the '352 and '660 patents and against Apotex on the latter. *Id*. at Dkt. No. 92.

Plaintiff then sued Lupin on December 30, 2024 in Delaware on the same five patents asserted against Cipla and Apotex. Dkt. No. 1, C.A. No. 1:24-cv-1423 (D. Del.) (JLH). In February 2025, the parties in the consolidated, lead case (the "759") agreed to stay Plaintiff's pending infringement-contentions deadline to permit the consolidation with the Lupin matter and to negotiate and implement a new scheduling order following that consolidation. Dkt. No. 103.

The process of negotiating the new schedule dragged on for months. Plaintiff substituted counsel in April 2025, which largely restarted negotiations regarding a trial date, discovery limitations, and limits on the number of asserted claims and prior art references. Adding to the delay was Plaintiff's listing of three new patents to the Orange Book for the Radicava NDA: U.S. Patent Nos. 12,194,025 ("the '025 patent") on February 11, 2025; 12,285,409 ("the '409 patent") on May 6, 2025; and 12,310,946 ("the '946 patent") on June 20, 2025. (As noted above, the '025 and '946 patents have been defined by Plaintiff as the "Food Effect" Patents.)

- 5 -

All Defendants asked Plaintiff to bring those three new patents into the Delaware 759 case promptly so that the new schedule that was then under negotiation could account for their inclusion so as to avoid the need for future delays. *See* Declaration of Sarah Fehm Stewart ("Stewart Decl."), Ex. A (March 25, 2025 Email from R. Niemeier to F. West requesting the '025 patent be added to the case); *id.* at Ex. B (June 13, 2025 and June 17, 2025 emails from K. Mathas to K. Guerra inquiring whether Plaintiff will agree to add the '409 and '025 patents[4] to the case). Plaintiff agreed to assert the '409 patent but refused to assert the '025 and '946 patents. *Id.* at Ex. C (March 31, 2025 Email from F. West to R. Niemeier refusing to add the '025 patent); *id.* at Ex. D (June 18 2025 Email from K. Guerra to K. Mathas agreeing to add the '409 patent, but not agreeing to add the '025 patent).[5]

Following those discussions, Plaintiff filed second complaints against Lupin and Cipla in the District of Delaware—albeit not in the consolidated matter—on July 3, 2025 and July 24, 2025, respectively, alleging infringement of the '409 patent. Dkt. No. 1, C.A. No. 1:25-cv-00828 (D. Del.) (JLH); Dkt. No. 1, C.A. No. 1:25-cv-929 (D. Del) (JLH).

Faced with Plaintiff's refusal to assert the '025 and '946 patents, the parties proceeded to finalize a proposed scheduling order, which was entered on August 26, 2025 and consolidated all Delaware actions under the lead 759 case. Dkt. No. 129. The parties then proceeded to exchange infringement, invalidity, non-infringement, and validity contentions in August and September of this year.

---

[4] Certain emails refer to the '409 and '025 patents as "the pop-up patents."

[5] During these email exchanges in April, May, and June, the '946 patent had not yet been listed in the Orange Book which occurred on June 20, 2025. Given Plaintiff's repeated refusal to add the '025 "Food Effect" Patent and the need to finalize a schedule, Defendants in the Delaware case did not repeat their request that the '946 patent, also a "Food Effect" Patent, be added to the case.

**B.      The New Jersey Actions**

While the Delaware parties were negotiating a new consolidation and scheduling order following the suit against Lupin and the new listing of three more Orange Book patents for Radicava, Plaintiff filed suit on April 25, 2025 in this District against Shanghai Auzone (C.A. No. 2:25-cv-3226 (D.N.J.)) on the '341, '416, '450, '352, and '660 patents.

Then, on October 15 and 16, Plaintiff filed five additional actions in this District against Shanghai Auzone (C.A. No. 2:25-cv-16665 (D.N.J.) (CCC)); Sandoz (C.A. No. 2:25-cv-16664 (D.N.J.) (CCC)); Cipla (C.A. No. 2:25-cv-16677 (D.N.J.) (CCC)); Lupin (C.A. No. 2:25-cv-16680 (D.N.J) (CCC)); and the instant action against Apotex (C.A. No. 2:25-cv-16679 (D.N.J) (CCC)). These cases asserted any of the eight Orange Book patents for Radicava that were not previously asserted against a defendant in a prior action. Thus, by October 16, 2025 all eight of the Orange Book patents were asserted, either in the District of Delaware or in this District, against each of the five Defendant groups. However, such assertions are splintered between the two Districts. As for Apotex, five Orange Book patents (the '341, '416, '450, '352, and '660 patents—all referenced by Plaintiff as the "Formulation Patents") are asserted in the consolidated, lead Delaware action while three Orange Book patents (the '025, '409, and '946 patents—the first and latter of which are referenced by Plaintiff as "Food Effect Patents" while the middle, the '409 patent, is a "Formulation Patent") are asserted in this matter.

The present action against Apotex in this District came just weeks after the parties exchanged opening contentions in the consolidated Delaware matter and months after Plaintiff refused to assert the '025 patent (and, implicitly, the '946 patent) against Apotex in Delaware.

**C.      The Motions to Transfer**

On October 23, 2025, Plaintiff requested to meet and confer regarding an anticipated motion to transfer the Delaware actions to this Court. The parties conferred on October 28. Apotex,

along with Lupin and Cipla, opposed Plaintiff's motion to transfer. During that meet and confer the parties also discussed motions by Apotex and the other Delaware defendants to transfer the newly filed New Jersey matters to Delaware for consolidation with the long-pending action there. On November 5, Plaintiff indicated it would oppose this motion.

On October 29, 2025, Plaintiff filed a motion to transfer the Delaware consolidated 759 action to this Court and stated that, if transferred, Plaintiff would seek to consolidate that action with the other actions related to Orange Book-listed Radicava patents in this District. Dkt. No. 147 at 2.

Apotex now files this motion and supporting memoranda seeking transfer of this case to Delaware for consolidation. Counsel for Apotex further understands that the Lupin, Cipla, Shanghai Auzone, and Sandoz defendants are also considering moving, or have already moved, to transfer their cases to Delaware as well.

## III.   ARGUMENT

### A.   This Action Could Have Been Brought in Delaware

A threshold inquiry in considering a motion to transfer a civil action is that the destination district must be a district "where [the action] might have been brought." 28 U.S.C. § 1404(a); *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). An action "might have been brought" in a transferee district if that district has: "(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte v. Armco Steep Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Here, there can be no dispute that this action could (even should) have been brought in Delaware.

First, the District of Delaware has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a). Second, there can be no dispute that the District of Delaware has personal jurisdiction over the parties in this case. The same Defendants here—*i.e.*, Apotex—were

- 8 -

named by Plaintiff in the Delaware actions involving the same allegations: infringement of Plaintiff's Orange Book patents relating to Radicava due to the filing of Apotex's ANDA. *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 n.5 (D.N.J. 1996) (finding jurisdiction in the transferee district was proper, where the transferee district "already exercised jurisdiction over these same defendants with respect to these same allegations.").

Third, venue is proper in the District of Delaware. Venue is proper in a patent infringement action in a district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Plaintiff has filed suit against Apotex two separate times in the District of Delaware for infringement of the Orange Book patents relating to the Radicava NDA 215446. *See* Dkt. No. 1, C.A. No. 1:24-cv-549 (D. Del.) (JLH); Dkt. No. 92, C.A. No. 1:23-cv-759 (D. Del.) (JLH). In both cases, Plaintiff alleged that venue and jurisdiction were proper and Apotex did not contest. *See, e.g.*, Dkt. No. 97 at ¶¶ 57–64, C.A. No. 1:24-cv-549 (D. Del.) (JLH).[6] Accordingly, the District of Delaware is a venue where this action could have been brought.

**B.    The First-Filed Rule Favors Transfer to Delaware**

Both the Third Circuit and Federal Circuit apply what is known as the "first-filed" rule. The first-filed rule holds that "the party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation

---

[6] While neither Apotex Inc. nor Apotex Corp. disputed venue in the District of Delaware, Apotex Corp. reserves the right to contest it in this District. Defendant Apotex Corp. is a Delaware corporation that is headquartered in Florida. Accordingly, the District of New Jersey is not one where suit could have been brought as to Apotex Corp. Plaintiff's argument in its Motion to Transfer from the District of Delaware that Apotex Corp. "regularly litigate[s] in New Jersey and ha[s] consented to personal jurisdiction and venue there" (Dkt No. 147 at 9–11) is insufficient. As that District recently found in denying a motion to transfer a case from Delaware to New Jersey, venue as to Apotex Corp. in New Jersey was not proper. *See Vifor (Int'l) AG v. Apotex Inc.*, No. 25-211, D.I. 32 at 3–7 (D. Del. Aug. 22, 2025) (Bryson, J. by designation).

of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). In other words, when two cases involving similar subject matter are pending in different venues, the first-filed action generally has priority. In the context of a motion to transfer, the first-filed rule favors transfer of the later-filed action to the district where the first-filed litigation is pending for potential consolidation. *Coyoy v. United States*, 526 F. Supp. 3d 30, 43 (D.N.J. 2021) (*citing E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). While the first-filed rule is not a mandate, deviations from the rule are appropriate only where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Coyoy*, 526 F. Supp. 3d at 43.

"The Federal Circuit applies the general rule favoring the forum of the first-filed case 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Id.* (citing *Genentech, Inc. v. Eli Lily and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). The Federal Circuit has recognized that its "precedent… favors the first-to-file rule in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment." *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005). Here, the first-filed rule supports transfer.

First, this case involves the same parties as the Delaware case—Plaintiff and Defendants Apotex Inc. and Apotex Corp. *See Coyoy*, 526 F. Supp. 3d at 43 (holding that the first-filed rule is properly invoked if the cases involve "the same parties and the same issues"). While it is true that the first-filed Delaware case has been consolidated to include additional unrelated defendants that Plaintiff has also sued, those additional defendants are irrelevant to the resolution of the disputes between Plaintiff and Apotex. *See Mahmoud v. Rite Aid Corp.*, C.A. No. 2:11-cv-06363, 2012 WL 3560645, at *5 (D.N.J. Aug. 16, 2012) (finding the first-filed rule applied despite differing

defendants between the two cases because "[u]ltimately, the facts pled by Plaintiff… focus on [the common defendant between the two actions].").

Second, both this case and the Delaware case involve the same issues. Both cases involve the same factual allegations, *i.e.*, the filing of the same ANDA by Apotex and the same drug product relating to the same NDA for Radicava. *Compare* Dkt. No. 1 at ¶¶ 2, 7, 11 *et seq.*, C.A. No. 1:24-cv-549 (D. Del.) (JLH) and Dkt. No. 1 at ¶¶ 2, 7, 14 *et seq.*, *with* Dkt. No. 1 at ¶¶ 2, 6, 12 *et seq.*, 2:25-cv-16679 (D.N.J.) (CCC). Plaintiff, in its motion to transfer the Delaware action to this Court, claims that the patents asserted here (identified in the motion as "Food Effect Patents") "involve different patents, from a different family, concerning different technology, with no overlapping inventors." Dkt. No. 147 at 19. While it is true that the Food Effect Patents asserted here have different inventors and are from a different family from the patents asserted in Delaware (identified in Plaintiff's motion as "Formulation Patents"), it is false that they concern different technology. Both sets of patents relate to edaravone formulations and methods of orally administering edaravone for the treatment of ALS. Moreover, unlike the other Delaware Defendants, Plaintiff had not asserted the '409 patent (which it refers to as a Formulation Patent) against Apotex in the Delaware actions, whether consolidated or otherwise. Thus, in this District, Plaintiff has asserted the '409 patent, in addition to the Food Effect patents. Dkt. No. 1 ¶¶ 1, 52–61, 2:25-cv-16679 (D.N.J.) (CCC).

While not in the context of the first-filed rule, this Court has previously noted within a motion to transfer analysis that two cases involving related patents, the same underlying technology, the same ANDA, and the same ANDA products can constitute the same or similar subject matter. *See Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 22-cv-7528, 2023 WL 1883357, at *6 (D.N.J. Feb. 10, 2023) (citing *Magnacross LLC v. GE MDS LLC*, C.A. No.

- 11 -

1:20-cv-964, 2020 WL 6581530, at *8 (D. Del. Nov. 10, 2020)). Other courts in this District have also held that two cases relate to the same issues even where one case relates only to trademark claims, while the other relates to both trademark and patent issues. *See Tekno Prods., Inc. v. Glove Trends Inc.*, C.A. No. 2:19-cv-00091, 2019 WL 7184544, at *7 (D.N.J. Dec. 26, 2019).

Moreover, Plaintiff's contentions that the Food Effect Patents involve different issues than the Formulation Patents should be afforded no weight in view of the fact that Plaintiff's own motion to transfer out of Delaware explicitly states that, if granted, it intends to seek consolidation of this case involving the Food Effect Patents with the Delaware case involving the Formulation Patents. Dkt. No. 147 at 2. Indeed, Plaintiff has already asserted both Food Effect and Formulation Patents in a single case against another Defendant. *See Mitsubishi Tanabe Pharma Corporation v. Sandoz Inc.*, C.A. No. 2:25-cv-16664 (D.N.J.). And Plaintiff has not asserted the '409 patent along with the rest of the Formulation Patents against Apotex in Delaware but—unlike with respect to Cipla and Lupin—has asserted it here along with the Food Effect Patents. Thus, Plaintiff's entire distinction between the Formulation and Food Effect Patents with respect to the two jurisdictions is nothing more than a red herring. Given the foregoing, Plaintiff's own actions and admissions reveal that both this case and the Delaware case against Apotex involve the same issues—*i.e.*, the same ANDA, the same NDA, and the same drug (Radicava ORS).

Despite that, Plaintiff may argue that the first-filed rule does not apply because the actions here involve different issues. But the Federal Circuit has made clear that it examines alleged differences in issues in the second-filed case with scrutiny:

> This court also gives little weight to the district court's second reason, namely that the second-filed infringement action is broader than the first filed declaratory judgment action. This reason carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction. If, as in this case, a patent holder could simply name

- 12 -

> another defendant or add a few additional claims to the later filed infringement, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect. Accordingly, although the relationship between the two competing lawsuits remains a consideration, this consideration cannot be given undue weight because it is easily manipulated.

*Micron Tech., Inc. v. Mosaid Techs, Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008). As the Court in *Micron* warned, here, Plaintiff's later-filed cases were filed in an attempt to manipulate venue to try and force a transfer. "But in ascertaining proper venue, [the Court is] not bound by a plaintiff's efforts to manipulate venue." *In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1377 (Fed Cir. 2021).

Finally, none of the exceptions to the first-filed rule are applicable in this case. Both cases at issue are straightforward Hatch-Waxman patent cases. And, as discussed below, the balance of convenience factors does not favor this later-filed action. *Cf. Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) (noting balance of convenience favoring the second-filed action is a basis for an exception).

Nor can there be any argument that Apotex or any Defendant has engaged in inequitable conduct, bad faith, or forum shopping. It was Plaintiff that filed each action. If any party has unclean hands here, it is Plaintiff. Plaintiff chose to file two lawsuits asserting five Radicava patents against Apotex in Delaware (and six patents against each of Lupin and Cipla) and has prosecuted the Delaware cases for more than two years before suddenly abandoning its chosen forum there for this District. Moreover, Apotex and its co-defendants in the Delaware matter requested several times that Plaintiff add the then- or soon-to-be-listed Food Effect Patents to the pending Delaware case which was refused. Stewart Decl., Exs. A–D. Now—less than three months later—Plaintiff asserts those patents against Apotex, along with the '409 Formulation Patent, here

while also attempting to move the other asserted patents to this Court with the ultimate goal of consolidating them into a single action against Apotex. *See* Dkt. No. 147 at 2.

No exception to the first-filed rule is warranted and, if anything, Plaintiff's litigation tactics should weigh against any exception to the rule. Indeed, Apotex can only surmise—particularly in light of the protracted procedural negotiations in the Delaware action and Plaintiff's unwillingness to assert the Food Effect (and '409) Patents there—that this case, those filed against Lupin and Cipla, and Plaintiff's concurrent Motion to Transfer from the District of Delaware, are all part of a concerted effort for the improper purpose of causing unnecessary delay. The filing of the complaints in this District against Apotex, Cipla, and Lupin, along with the Delaware Motion to Transfer, have already needlessly increased the cost of litigation and caused unnecessary delay in the furtherance of the central dispute between the parties. Thus, this second-filed case should be transferred to the District of Delaware for consolidation with the first-filed matter(s).

### C.    The Interests of Justice and Convenience are Best Served by Transfer to Delaware

Even if the Court finds the first-filed rule is inapplicable here, transfer is still warranted pursuant to Section 1404(a) because the District of Delaware is a convenient venue for the parties and is in the interest of justice. The Third Circuit has enumerated several private and public interests that courts may consider when deciding whether to grant a motion to transfer under Section 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). These private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* The public interests include: (1) the enforceability

- 14 -

of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* The balance of these factors, when applied to the facts of this case, support transfer of this case to Delaware.

### 1.    The balance of private interest factors weigh in favor of transfer

The first factor—plaintiff's forum preference—is normally entitled to deference by courts; however, this deference is limited where plaintiff's chosen forum is not its home forum. *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 2:22-cv-7528, 2023 WL 1883357, at *4 (D.N.J. Feb. 10, 2023) (collecting cases). Here, New Jersey is not Plaintiff's home forum. Plaintiff is a foreign corporation organized and primarily based in Japan. *See* Dkt. No. 1 at ¶ 13. Thus, this factor is entitled to little weight and is at most neutral in the transfer analysis. *See Vanda Pharms.*, 2023 WL 1883357, at *4 (finding plaintiff's choice to file in New Jersey did not weight against transfer where it was based in Delaware).

Moreover, this case is not a typical dispute between a plaintiff who filed a suit in their preferred venue and a defendant who wishes to transfer to a venue of their choice. Rather, it is *Plaintiff* that chose Delaware as the venue for its Radicava litigation for two years, and *Plaintiff* that—apparently now dissatisfied with Delaware—chose New Jersey as its new preferred venue. Thus, *both* choices at issue here are Plaintiff's and its forum-shopping is entitled to no deference. Indeed, courts in the Third Circuit have recognized that it is plaintiff's *original choice* of forum that takes precedence. *See, e.g.*, *Stewart v. First Student*, 639 F. Supp. 3d 492, 499 (E.D. Pa. 2022) ("*Jumara* makes plain that this factor considers 'plaintiff's forum preference as manifested in the

- 15 -

*original* choice.'"). Here, Plaintiff manifested its original choice for the District of Delaware and thus, its newfound preference for this District can be disregarded.

The second private factor—defendants' preference of forum—weighs in favor of transfer. Apotex seeks to have this case transferred to Delaware where it has been litigating against Plaintiff on related patents for over a year-and-a-half. *See also Intendis, Inc. v. River's Edge Pharm., LLC*, C.A. No. 2:11-cv-2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011) (Hochberg, J.) (finding factor two weighed in favor of transfer, where the plaintiffs had "demonstrated their willingness to litigate there" by filing a related action in that forum). Apotex has expended significant resources litigating this matter in Delaware and its preference to leverage those efforts by moving this case to Delaware to more efficiently litigate this case favors transfer.

The third factor—whether the claim arose elsewhere—is neutral. For this factor, the Court may consider whether the operative facts concerning the "center of gravity" relating to the accused product—which in patent infringement cases is "the location of the product's development, testing, research and production, as well as where marketing decisions are made." *Vanda Pharms.*, 2023 WL 1883357, at *5 (internal citation omitted).

Here, New Jersey cannot be the center of gravity for this case. On information and belief, much of the research and development on the asserted patents occurred in Japan, and most or all of the inventors are located in Japan. Moreover, much of the development of Apotex's ANDA and ANDA product occurred in Canada, where Apotex's research and development functions are primarily based. Where the operative facts occurred outside of the two districts at issue, this Court has found the factor to be neutral. *Vanda Pharms.*, 2023 WL 1883357, at *5.

The fourth factor—convenience of the parties as indicated by their relative physical and financial condition—is neutral. Neither party has substantial operations relevant to the issues to be

- 16 -

litigated in either forum. That is, the majority of development and regulatory capabilities of the parties are located outside of either District, if not the United States. Moreover, both Districts are located in relative proximity. The parties are large and sophisticated entities with sufficient resources to litigate in either forum. *See id.* Thus, New Jersey will be no more convenient for the parties based on their physical and financial condition than Delaware.

The fifth factor—convenience of the witnesses—need not be considered or is, at most, neutral. The Third Circuit has found this factor should only be considered to the extent a witness may actually be unavailable for trial. *Jumara*, 55 F.3d at 879. Based on Apotex's present understanding, there is no basis to believe a witness from either party would be unavailable to appear in either venue for trial. Moreover, the majority of witnesses for both Plaintiff and Apotex are likely to reside outside either District and any difficulty appearing for trial would apply equally whether the action was in New Jersey or Delaware.

The sixth and final factor—location of books and records—is also neutral. Based on Apotex's present understanding, most relevant records or books are likely to be electronically stored or physically located outside of the fora at issue. Thus, it would not be any more convenient to produce these materials in this District as opposed to Delaware.

The private interest factors weigh in favor of transfer. *Accord Vanda Pharms.*, 2023 WL 1883357, at *5 (finding private factors weigh in favor of transfer where each factor is in favor of transfer or neutral).

### 2. The balance of public interest factors weigh in favor of transfer

The public interest factors are largely neutral. However, the second and third factors weigh strongly in favor of transfer.

      **(a)**      **The practical considerations that could make the trial easy, expeditious, or inexpensive weigh strongly in favor of transfer.**

The second factor—practical considerations that could make the trial easy, expeditious, or inexpensive—weighs heavily in favor of transfer to Delaware. When considering whether there are practical considerations that weigh in favor of transferring a particular case:

> …courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue specifically, such a transfer allows for pretrial discovery to be conducted more efficiently, saves witnesses' time and money, both with respect to pretrial and trial proceedings, avoids duplicative litigation, thereby eliminating unnecessary expense to the parties, and at the same time serves the public interest and avoids inconsistent results."

*Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 623 (D.N.J. 2022) (citation modified).

Here related litigation has been pending in Delaware involving the same parties for over a year-and-a-half. These cases involve patent infringement claims related to the same Apotex ANDA and ANDA product at issue here, and the patents in both Delaware and this case all relate to the same Radicava drug product. Transferring this case to Delaware to be consolidated with the pending litigation, there, will allow pretrial discovery, which will undoubtedly have significant overlap between the cases given their similar factual predicates, to proceed more efficiently. It will also reduce duplicative proceedings and eliminate unnecessary expense as well as the risk of conflicting or inconsistent results.

While Plaintiff is expected to argue that the two Food Effect Patents asserted here are not part of the same patent family and lack common inventors with the Formulation Patents asserted against Apotex in Delaware, that is not a sufficient basis to overcome the efficiencies weighing in favor of transfer. Unlike other defendants, Plaintiff has asserted five of the Formulation Patents against Apotex in Delaware and one of the Formulation Patents here, along with the two Food

- 18 -

Effect patents. As such, Plaintiff's manufactured distinction between the two sets of patents-at-issue in or between the two Districts does not apply to Apotex.

Moreover, there *is* substantial factual overlap as both sets of patents deal with treatment of ALS using Radicava. Even if the issues and underlying facts are not entirely identical amidst all the patents, there will be substantial overlap and thus substantial efficiency benefits by transferring this case to Delaware where that Court can leverage its years of experience with these issues. *See Vanda Pharms.*, 2023 WL 1883357, at *6 (finding this factor favors transfer where the transferee court had years of experience with prior litigation covering the same drug product and involving similar infringement allegations even where the prior case in the transferee venue had already been completed and was not co-pending). *See also Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("[Where] several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.").

Further, any argument by Plaintiff that there is no overlap in the subject matter or that there would be no efficiency in combining this case with the Delaware litigation is belied by its own contention in its pending motion to transfer the Delaware cases to this Court purportedly for the sake of efficiency. Plaintiff plainly admits there that, if its motion is granted, it intends to move to consolidate both cases against Apotex into one action in this Court. Dkt. No. 147 at 2. If Plaintiff were truly concerned about efficiency, it would have asserted the Food Effect Patents (and the '409 patent) against Apotex and its Delaware co-Defendants *in Delaware* and as requested.

To the extent that Plaintiff concedes there would be efficiency in consolidating this action with the Delaware actions but argues that this factor weighs in favor of making that consolidation here in New Jersey, that is also wrong. The parties have already exchanged significant discovery

- 19 -

in Delaware as well as spent months negotiating scheduling orders, limits on discovery, limits on claims and defenses, and a protective order, not to mention full rounds of serving contentions. All of that would be directly applicable to this case if transferred even if there are some unique substantive issues between the cases. Compare that to Plaintiff's preferred outcome of consolidation in New Jersey where no litigation involving these patents has gone beyond the pleading stage and the efforts undertaken by Apotex and the consolidated co-defendants in Delaware would need to be repeated, wasting time and resources, and likely burdening the Court with disputes already addressed in Delaware.

As to Plaintiff's expected argument that New Jersey is the only venue where all eight patents are currently pending and thus the Delaware cases should be transferred here rather than the reverse, that argument deserves no weight at all because that fact is solely the result of Plaintiff's litigation tactics and its attempt to manipulate venue. Indeed, such efforts to manipulate venue can be *disregarded* in the transfer analysis. *See In re Samsung*, 2 F.4th at 1377 ("[T]he Supreme Court and this court have repeatedly assessed the propriety of venue by disregarding manipulative activities of the parties.").

Plaintiff refused, despite Apotex and its Delaware co-defendants' requests, to assert the Food Effect Patents in the Delaware litigation, apparently for the purpose of asserting them here as a basis to relocate all proceedings to this venue and to obtain a second bite at issues already resolved in Delaware. Plaintiff's attempt to delay and relitigate its disputes against Apotex using this Court should not be rewarded. Similar conduct was rebuffed by this Court in *Vanda* where the plaintiff, having lost at trial in Delaware, filed another suit on the same drug product using patents in the same family in New Jersey in an attempt to obtain a remedy denied to it by Delaware. *See* 2023 WL 1883357, at *6.

This Court has also granted transfer of a case from this District to Delaware in a similar situation wherein a generic manufacturer had already been sued in Delaware on a subset of Orange Book patents and the Plaintiff then asserted another set of newly-listed Orange Book patents, related to the same NDA, in this District. *Bayer Pharma AG, et al. v. Watson Labs, Inc. et al.*, C.A. No. 2:14-cv-2065 (JLL) (JAD) (Dkt. 31) (D.N.J. Jun. 2, 2014) (Dickson, M.J.). As the Court noted there, with very similar circumstances to the instant matter, while addressing the "practical considerations" factor:

> Both sets of cases involve the same parties, the same ANDAs and the same products… and it appears that both will involve testimony from some of the same party witnesses and consideration of at least some of the same party documents regarding the development of both the products at issue and Defendants' ANDAs. In short, *the primary distinction between the two sets of cases is that, while the Delaware Actions concern whether Defendants' ANDAs unlawfully infringe upon the Compound Patents…, the cases pending in this District are focused on whether the same ANDAs also infringe upon Plaintiff's Formulation Patent…* While adjudication of Plaintiffs' claims regarding the Formulation Patent will necessarily require additional evidence and expert testimony on the formulation-specific issues, there is no valid reason why those issues could (or should) not be tried together with Plaintiff's Compound Patent claims.

*Id*. at 16 (emphasis added). The matter here is akin, right down to the previously filed Delaware Actions on earlier Orange Book patents. *Id*. at 2–4. Plaintiff here contends that there are two sets of patents, both of which are related to the same NDA and the same ANDA(s). In *Bayer*, this District transferred such a matter to Delaware because of that same procedural posture and because "[t]his example of judicial efficiency is precisely the sort of practical consideration that is vital to a transfer analysis." *Id*. at 16. Accordingly, this factor weighs strongly in favor of transferring this case to Delaware.

        **(b)**       **The relative administrative difficulty in the two fora favors transfer to Delaware.**

The third factor—relative administrative difficulty in the two fora resulting from court congestion—favors transfer. Both New Jersey and Delaware are busy districts that handle a large number of patent suits. Each district handles a large number of Hatch-Waxman matters and the judges in each fora are similarly experienced with the issues and procedures in these matters and efficient at presiding over them.

Indeed, the median time to trial for a patent action is extremely similar in both districts: 29 months in this District and 28 months in the District of Delaware. Stewart Decl., Ex. E (Docket Navigator Time to Trial Statistics). Thus, this factor is at least neutral. *See Vanda Pharms.*, 2023 WL 1883357, at *5. From publicly available data on Lex Machina, however, this Court currently has roughly **11,500 more** civil cases on its docket than Judge Hall in the District of Delaware. *Id.* at Ex. F. In fact, this Court has about **10,000 more** civil cases currently pending than are pending in the *entire District of Delaware. Compare id.*, *with id. at* Ex. G. Thus, caseload statistics support transfer.

This factor further weighs in favor of transfer because the parties are not starting from zero. As discussed above for the second factor, when the Delaware Defendants are taken into consideration, all parties have litigated for more than two years in Delaware and have expended extensive time and energy negotiating a schedule, limitations on discovery, and a protective order. These procedural accomplishments in the Delaware cases would be directly applicable to this case if transferred. That would reduce potential burden on the presiding court by reducing the number of potential procedural disputes that may require judicial resolution and could allow the parties to speed through the early phases of this case more quickly than in a completely new matter here.

Thus, this matter is likely to impose less burden on already busy Courts if sent to Delaware and to proceed more quickly to trial there. This factor weighs in favor of transfer.

### (c)    The remaining public interest factors are neutral.

The first factor—enforceability of the judgment—and sixth factor—familiarity of the trial judge with applicable state law in diversity cases—are neutral because this case arises under a federal question. *Vanda Pharms.*, 2023 WL 1883357, at *5. The fourth factor—local interest in deciding local controversies—and fifth factor—public policies of the fora—are neutral because neither Delaware nor New Jersey have a preferred interest in resolving patent infringement disputes and no District-specific public policies are implicated. *COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*, No. 09-6505, 2010 WL 2539692, at *5 (D.N.J. June 17, 2010) ("Patent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum.").

### 3.    The *Jumara* Factors Weigh in Favor of Transfer

The private interest factors are neutral or, in the case of the first and second factors, weigh in favor of transfer. Likewise the public interest factors, are neutral, or in the case of the second and third factors, strongly in favor of transfer to Delaware. Thus, the balance of these factors weighs strongly in favor of transfer to Delaware.

- 23 -

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and transfer venue to the District of Delaware.

Dated: November 12, 2025

Respectfully submitted,

By: /s/ Sarah Fehm Stewart
Sarah Fehm Stewart
Duane Morris LLP
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 424-2061
sfstewart@duanemorris.com

Deepro R. Mukerjee (*pro hac vice* forthcoming)
Lance A. Soderstrom (*pro hac vice* forthcoming)
Christopher B. Prescott (*pro hac vice* forthcoming)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8800
deepro.mukerjee@katten.com
lance.soderstrom@katten.com
christopher.prescott@katten.com

Joseph M. Janusz (*pro hac vice* forthcoming)
KATTEN MUCHIN ROSENMAN LLP
615 S. College Street, Suite 1700
Charlotte, NC 28202-3354
Telephone: (704) 444-2000
joseph.janusz@katten.com

*Attorneys for Defendants*
*Apotex Inc. and Apotex Corp.*

- 24 -