**IN THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MITSUBISHI TANABE PHARMA CORPORATION,<br><br>　　　*Plaintiff*,<br><br>　　　v.<br><br>APOTEX INC. and APOTEX CORP.,<br><br>　　　*Defendants*. | Civil Action No. 25-16679-CCC-LDW |

**APOTEX'S REPLY BRIEF IN FURTHER SUPPORT OF**
**THEIR MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT............................................................................................................ 1

    A.   It is Undisputed That This Action Could Have Been Brought in Delaware................. 1

    B.   The First-Filed Rule Applies Here............................................................................. 1

        i.    Plaintiff ignores the inconsistency in its position that the cases should be consolidated while also arguing that they involve different issues...................... 3

        ii.   Plaintiff manipulated venue to try and bring all actions to this District. ............. 4

        iii.  Plaintiff's framing of the first-filed caselaw is misplaced. ................................. 5

    C.   The *Jumara* Factors Strongly Favor Transfer.............................................................. 6

        i.    Private Interest Factors .................................................................................... 6

            1.   Private Factor 1: Plaintiff's Forum Preference as Manifested in the Original Choice is Neutral. .......................................................................... 6

            2.   Private Factor 2: Defendants' Forum Preference is Delaware, Favoring Transfer. ..................................................................................................... 8

            3.   Private Factor 3: The Claims Arose Elsewhere, Making this Factor Neutral....................................................................................................... 8

            4.   Private Factor 4: Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition is Neutral............................................... 9

            5.   Plaintiff Agrees that the Other Private Interest Factors are Neutral. .......... 9

        ii.   Public Interest Factors...................................................................................... 9

            1.   Public Factor 2: Practical Considerations Weigh Strongly in Favor of Transfer. ..................................................................................................... 9

            2.   Public Factor 3: The Courts' Respective Caseloads Favors Transfer....... 10

            3.   Public Factors 4: There is no Strong Local Interest in Deciding this Case in New Jersey............................................................................................ 11

            4.   Public Factors 1, 5, and 6 are Neutral........................................................ 11

III.  CONCLUSION...................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Roxane Lab'ys, Inc.*,
No. 12-457, 2013 WL 2322770 (D. Del. May 28, 2013) ...........................................................4

*Cellectis S.A. v. Precision Biosciencies, Inc.*,
858 F. Supp. 2d 376 (D. Del. 2012)..........................................................................................5

*COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*,
No. 09-6505, 2010 WL 2539692 (D.N.J. June 17, 2010).........................................................11

*E.E.O.C. v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988)......................................................................................................1

*Fuller v. Insys Therapeutics, Inc.*,
No. 17-07877, 2018 WL 4275992 (D.N.J. Sept. 6, 2018).........................................................7

*Genentech, Inc. v. Sandoz, Inc.*,
No. 23-4085, 2025 WL 76937 (D.N.J. Jan. 3, 2025)................................................................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................................................................11

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009).................................................................................................11

*Indivior Inc. v. Dr. Reddy's Laboratories S.A.*,
No. 17-07111, 2018 WL 4921541 (D.N.J. July 12, 2018) .......................................................5

*Intendis, Inc. v. River's Edge Pharm., LLC*,
No. 11-2838, 2011 WL 5513195 (D.N.J. Nov. 10, 2011) ........................................................8

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)................................................................................................6, 9, 12

*Karimi v. Deutsche Bank Aktiengesellschaft*,
No. 20-08978, 2022 WL 1001566 (D.N.J. Mar. 31, 2022) ......................................................8

*Muhammad v. State Farm Indem. Co.*,
719 F. Supp. 3d 397 (D.N.J. 2024) ...........................................................................................2

*Palazzo v. Ciurlino*,
No. 05-5093, 2006 WL 2177542 (D.N.J. July 28, 2006) .........................................................7

iii

*Personal Genomics Taiwan Inc. v. Pacific Biosciences of California Inc.*,
No. 19-1810, 2024 WL 3043329 (D. Del. June 18, 2024) ......................................................10

*Stewart v. First Student*,
639 F. Supp. 3d 492 (E.D. Pa. 2022) ..................................................................................6, 7

*Tekno Prods., Inc. v. Glove Trends Inc.*,
No. 19-00091, 2019 WL 7184544 (D.N.J. Dec. 26, 2019)..................................................5, 6

*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
Nos. 22-7528, 22-7529, 2023 WL 1883357 (D.N.J. Feb. 10, 2023) ....................................5, 6

## I.  INTRODUCTION

Plaintiff's[1] Brief in Opposition to Defendants' Motion to Transfer (ECF No. 16) ("Opposition") attempts to sidestep the fact that the center of gravity of their dispute did not change; only Plaintiff's filing strategy. The "factual developments" (*id.* at 1) that Plaintiff relies on to support its position were within Plaintiff's control if not the direct result of its own actions. Moreover, Plaintiff's attempt to recast Defendants as inactive litigants because Defendants did not initiate suit themselves on Plaintiff's Food Effect Patents is incorrect. Plaintiff chose to litigate the RADICAVA ORS® patents in the District of Delaware for two years and the same accused ANDA Products are at issue in the District of Delaware. As such, the first-filed rule and the interests of justice and convenience favor transfer of this case to the District of Delaware. To find otherwise would permit Plaintiff to engage in forum shopping, unnecessarily burden this Court, and thwart the years of work done in the Delaware RADICAVA ORS® litigation—pending since 2023.

## II.  ARGUMENT

### A.  It is Undisputed That This Action Could Have Been Brought in Delaware.

Plaintiff does not—and cannot—dispute that the instant action could have been brought in Delaware, just like the previous actions against Apotex and the other co-defendants in the District of Delaware, Cipla and Lupin. Accordingly, it is undisputed that the threshold inquiry is satisfied.

### B.  The First-Filed Rule Applies Here.

This case involves "the same parties and the same issues already before another district court," as is required for the first-filed rule to apply. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). Defendants plainly argued as much in the Opening Brief. *See* ECF No. 10-1 at

---

[1] Terms not defined herein have the same meaning as set forth in Defendants' moving brief. (ECF No. 10-1).

9–14. Plaintiff's suggestion that Defendants applied a lower standard can be summarily rejected. *Compare* ECF No. 10 at 10–11 (the first-filed rule applies because "this case involves the same parties as the Delaware case," and because "this case and the Delaware case involve the same issues"), *with* ECF No. 16 at 13 (arguing that Defendants "attempt[ed] to lower the bar to 'similar subject matter'"); *see also id.* at 14 (quoting Defendants' Opening Brief noting that "the Delaware case involves 'the same issues'").

While this is not a typical first-filed case involving a race to the courthouse, the equities of the rule apply with equal if not greater force. As Plaintiff concedes, "the first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation." *Id*. at 13. The fact that there is now concurrent and duplicative litigation is entirely of Plaintiff's making. Plaintiff's suggestion that the first-filed rule should not apply because it changed its mind about where it wanted to litigate should be given little weight.

Turning to the merits, Plaintiff does not—and cannot—dispute that this case and the Delaware case involve the same parties. Plaintiff's only dispute—whether the same issues are implicated in the two cases—is premised on an improperly narrow view of the caselaw.

In *Muhammad v. State Farm Indem. Co.*, Judge Farbiarz provided an exhaustive analysis of the case law in this district, the Third Circuit, and other circuits nationwide regarding the meaning of "same issues." 719 F. Supp. 3d 397, 403–07 (D.N.J. 2024). After parsing dozens of cases, the court there concluded that both the Third Circuit and others have in practice—whether explicitly stated or not—required only "closely similar factual and legal issues" (*id*. at 406), not identical as Plaintiff suggests. Here, at the very least, that is so.

It is undisputed that the accused act of infringement—Apotex's filing of ANDA No. 219256—is the same activity that caused both cases. *Compare* ECF No. 1 at ¶ 2, *with* ECF No. 1

2

at ¶ 2, C.A. 24-00549 (D. Del.) and ECF No. 92 at ¶ 2, C.A. No. 23-00759 (D. Del.). It is also undisputed that all patents asserted between the cases are listed in the Orange Book for the same product, RADICAVA ORS®, covered by Plaintiff's same NDA 215446. While Plaintiff argues that the issues are not the same because of different patent families and inventors, it cannot overcome the fact that the factual and legal issues are closely similar and, in light of Plaintiff's NDA and related Orange Book Patents, inextricably interrelated.

The technology of the two patent families is also fundamentally the same. Both sets of patents relate to edaravone formulations and methods of orally administering edaravone for the treatment of ALS. *Compare* '025 Patent, Claim 1 ("A method of treating [ALS], comprising: orally or intragastrically administering, to a subject in need thereof, a liquid pharmaceutical composition comprising edaravone…"), *with* '416 Patent at 2:6–8 ("According to another aspect of the present invention, an ALS therapeutic agent includes an edaravone suspension including edaravone particles,…") and Claim 20 ("…the edaravone suspension is orally administered to a human…"). Indeed, Plaintiff concedes that the "infringement assessments for both patent families will look to the proposed generic products of each defendant" (ECF No. 16 at 14) and that "the prior art references may overlap" (*id.* at 15).

Thus, the same parties and issues are already before the District of Delaware, and the Court should grant Defendants' motion to transfer. The Court should also reject Plaintiff's erroneous attempts to avoid the first-filed law by citing inapposite case law.

        i.        **Plaintiff ignores the inconsistency in its position that the cases should be consolidated while also arguing that they involve different issues.**

Rather than meaningfully engage with Defendants' argument highlighting the inconsistency in Plaintiff's position—simultaneously arguing that the issues in the cases are so different that the first-filed rule does not apply while also arguing that they are so similar that the

3

cases should be consolidated—Plaintiff skirts the issue by instead arguing that the legal standards are different. ECF No. 16 at 16–17. Plaintiff is setting up and then knocking down its own strawman. Defendants did not argue that the legal standards are the same. Rather, Defendants highlighted that Plaintiff's position—that the two cases involve different issues—conflicts with its argument that consolidation of all of the cases in this District is warranted because they have "factual and legal overlap." *See* C.A. 23-cv-00759 (D. Del.), ECF No. 150 at 14 (quoting *Abbott Lab'ys v. Roxane Lab'ys, Inc.*, No. 12-457, 2013 WL 2322770, at *24 (D. Del. May 28, 2013)). That admitted factual and legal overlap, alone, supports application of the first-filed rule.

   **ii.**   **Plaintiff manipulated venue to try and bring all actions to this District.**

Defendants asked that the Food Effect Patents be brought in Delaware almost nine months ago. ECF No. 10-2 (PageID: 265–66) (Mar. 25, 2025 email from R. Niemeier to F. West). Defendants reiterated their request that the Food Effect Patents be asserted in the Delaware action. *See* ECF No. 10-2 (PageID: 242–44) (Jun. 13–17, 2025 emails between the parties' counsel); C.A. 24-cv-00759 (D. Del.), ECF No. 152-1, 152-2, 152-3. Plaintiff's stated reason for not bringing the patents into the Delaware case was that it would make the case too "complex." *See, e.g.*, ECF No. 10-2 (PageID: 264–65) (Mar. 31 email from F. West to R. Niemeier). But now, Plaintiff seeks to assert eight patents from two families in a consolidated action against six different defendant groups; the same facts it is trying to use to argue that the Delaware actions should be transferred to this District. *See* C.A. 24-cv-00759 (D. Del.), ECF No. 150 at 13–14. Plaintiff decried Defendants' "rhetoric" regarding Plaintiff's manipulation of venue, but Plaintiff's course of conduct since March speaks for itself.

Moreover, Plaintiff suggests that it switched course and started filing in New Jersey because "New Jersey-headquartered defendants entered the picture." ECF 16 at 1. The record differs. Plaintiff began its campaign to switch the cases to this District when it sued Shanghai

4

Auzone here in April 2025 on only "Formulation Patents." *See* 2:25-cv-03326-CCC-LDW, ECF 1 ¶ 1. Shanghai is not a "New Jersey headquartered defendant." Rather, it has no connection with New Jersey. Plaintiff's *ex post* justification falls apart under the weight of the facts.

### iii.      Plaintiff's framing of the first-filed caselaw is misplaced.

Plaintiff's primary case, *Indivior* (ECF 16 at 14), is distinguishable. There, the alleged first-filed action in the District of Delaware had already concluded and the court had issued a final judgment at the time of defendant's motion to transfer. *See Indivior Inc. v. Dr. Reddy's Laboratories S.A.*, No. 17-07111, 2018 WL 4921541, at *2 (D.N.J. July 12, 2018). Here, the first-filed case in Delaware is still pending and will have a "bearing on the ultimate determination of the controversy." *Id.* at *8 (quoting *Cellectis S.A. v. Precision Biosciencies, Inc.*, 858 F. Supp. 2d 376, 384–85 (D. Del. 2012)). The core dispute between the parties is whether Apotex's ANDA product can be marketed and sold in the United States. That question—as it relates to Apotex's same ANDA and Plaintiff's same NDA—remains presently in dispute in both cases.

Plaintiff's attempts to distinguish *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, Nos. 22-7528, 22-7529, 2023 WL 1883357 (D.N.J. Feb. 10, 2023) and *Tekno Prods., Inc. v. Glove Trends Inc.*, No. 19-00091, 2019 WL 7184544 (D.N.J. Dec. 26, 2019) are unavailing. While *Vanda* did not address the first-filed rule directly, a fact that Defendants acknowledged in the Opening Brief (ECF No. 10-1 at 11), *Vanda* does concern an analogous transfer motion in an ANDA case which is instructive here. There, this Court noted that:

> Vanda concedes that "the same ANDA products are involved," but nevertheless asserts "the issues in the Delaware litigation have little to do with those that will be litigated here." As explained above, however, the Court finds that Vanda understates the relevance of a prior complex drug patent case concerning the same family of patents, the same product, the same ANDAs, the same patent specification, the same product label (where this case asserts induced infringement based on that label), related prior art, and many of the same witnesses.

*Vanda*, 2023 WL 1883357 at *6, n.5 (internal citations omitted). The same is true here. Plaintiff concedes that the same ANDA products are at issue but nonetheless asserts that the issues are different by "understat[ing] the relevance of" the prior filed Delaware action. *Id.*

Plaintiff's argument as to why this Court's ruling in *Tekno* is "inapplicable" similarly fails. Plaintiff argues that *Tekno* "involved a dispute over the ownership of an **identical** trademark between the same parties, and the factual issues were the same in both actions. That there were added patent issues in one action was immaterial because the core controversy was identical." ECF No. 16 at 16 (emphasis provided). But this Court in *Tekno* recognized that the first-filed rule "does not require the 'causes of action' to be identical. Rather, it requires the actions to relate to the 'same issues.'" *Tekno Products, Inc. v. Glove Trends Inc.*, No. 19-00091, 2019 WL 7184544, at *7 (D.N.J. Dec. 26, 2019) (internal citations omitted). Moreover, Plaintiff's concession that the controversy in *Tekno* was identical, even where one case did not involve patent claims, undercuts its argument that, because the patents at issue in the cases here are from different families, the issues are also necessarily different. They are not. The first-filed rule applies and supports transfer.

### C.     The *Jumara* Factors Strongly Favor Transfer.

The *Jumara* factors strongly favor transfer. Plaintiff's arguments to the contrary are unavailing and ignore clear case law.

#### i.     Private Interest Factors

##### 1.     Private Factor 1: Plaintiff's Forum Preference as Manifested in the Original Choice is Neutral.

The first private interest factor, "Plaintiff's forum preference *as manifested in the original choice*" (*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (emphasis added)), is neutral for two reasons. **First**, Plaintiff is a foreign corporation. This Court has consistently found that this fact renders this *Jumara* factor neutral. *Vanda*, 2023 WL 1883357, at *4 (collecting cases).

Plaintiff argues that because it has a U.S. subsidiary based in New Jersey—which is **not a party to this case**—the Court should disregard this line of cases. Plaintiff cites no case law in support of that assertion, highlighting its weakness.

**Second**, Plaintiff's original forum choice for RADICAVA ORS® patent litigation was Delaware. Plaintiff again and again filed suit on patents listed in the Orange Book for RADICAVA ORS® in the District of Delaware over the course of two years. Plaintiff's primary retort against holding Plaintiff to its original choice of forum is that Defendants' cited case (*Stewart v. First Student*, 639 F. Supp. 3d 492 (E.D. Pa. 2022)) is from a different district in the Third Circuit. That is no answer. *Stewart* is well-reasoned persuasive authority that this Court can find entirely instructive.  Moreover, courts in *this* district have likewise emphasized that the Plaintiff's original choice of forum is the key and, accordingly, if "a plaintiff seeks to transfer, plaintiff's original choice becomes a neutral factor." *Fuller v. Insys Therapeutics, Inc.*, No. 17-07877, 2018 WL 4275992, at *2 (D.N.J. Sept. 6, 2018) (internal quotations and citation omitted); *Palazzo v. Ciurlino*, No. 05-5093, 2006 WL 2177542, at *1 (D.N.J. July 28, 2006) ("Where it is the plaintiff seeking to transfer the case, the 'paramount consideration' given to the plaintiff's original choice of venue becomes a neutral factor") (internal citation omitted)).

Last, Plaintiff's argument that transfer is unwarranted because Defendants did not certify or seek declaratory relief against the Food Effect Patents quickly enough is unsupported. The *Genentech* case on which Plaintiff relies involved a party that waited two years to file a Paragraph IV certification with the goal of keeping patents out of a prior litigation. *Genentech, Inc. v. Sandoz, Inc.*, No. 23-4085, 2025 WL 76937, at *5 n.3, *8 (D.N.J. Jan. 3, 2025). Nothing of that sort occurred here. Rather, as noted, the Delaware Defendants, including Apotex, repeatedly requested that the "Food Effect Patents" be added in Delaware and filed some related certifications.

Defendants' instant Motion is another good-faith attempt to have the Food Effect patents litigated in and consolidated with the long-pending Delaware matter. Defendants have worked diligently to bring a years-long stream of patents into the Delaware case as they are listed. It is Plaintiff that has resisted those efforts seemingly in order to manufacture a basis for transfer out of Delaware.

### 2. Private Factor 2: Defendants' Forum Preference is Delaware, Favoring Transfer.

This factor favors transfer as Defendants have manifested a preference to litigate the Food Effect Patents in Delaware since March. *See* ECF No. 10-3; *see also Intendis, Inc. v. River's Edge Pharm., LLC*, No. 11-2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011). As described above, Plaintiff's argument that Defendants' "conduct" does not support transfer should hold no weight.

### 3. Private Factor 3: The Claims Arose Elsewhere, Making this Factor Neutral.

Arguing that this factor weighs against transfer, Plaintiff relies on its own, non-party subsidiary and agents of other defendants that are allegedly in New Jersey (ECF. No. 16 at 23). This argument is unavailing. The face of the Food Effect Patents indicate that all inventors resided in Japan as of the patents' filings. Plaintiff's unsupported assertion that "at least one of the inventors is ***currently located*** in New Jersey" (ECF No. 17 at 22-23), does not affect an analysis of where the claims arose, and should be entitled to no weight.

Throughout its opposition, Plaintiff refers to an alleged change or shift in the "litigation's center of gravity" (ECF No. 16 at 1 *et seq*.) which, if relevant at all, might apply to private factor 3 relating to where the "dispute, its events, and transactions" occurred. *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-08978, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022). The "change" on which Plaintiff relies is the emergence of other, unrelated parties that allegedly filed their ANDAs in this District. But it cannot be correct that the actions of unrelated parties, years after the consolidated Delaware action began, should necessarily justify a transfer of the pending

8

Delaware claims to this Court or block the transfer of the instant matter to Delaware. Were that correct, then any defendant could face transfer at any time that a plaintiff filed a similar action against another, unrelated party in another district. As such, this factor is at most neutral.

4.       **Private Factor 4: Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition is Neutral.**

Plaintiff's non-party subsidiary does not factor into an analysis of the relative physical and financial conditions of the "***parties***." This factor should only be considered to the extent that a witness may actually be unavailable for trial. *Jumara*, 55 F.3d at 879. Plaintiff has not made any argument that a witness may be unavailable for trial in Delaware. Thus, this factor is neutral.

5.       **Plaintiff Agrees that the Other Private Interest Factors are Neutral.**

Plaintiff does not dispute that private interest factors 5 (convenience of witnesses) and 6 (location of books and records) are neutral. ECF No. 16 at 24.

ii.       **Public Interest Factors**

1.       **Public Factor 2: Practical Considerations Weigh Strongly in Favor of Transfer.**

Defendants explained at length the practical considerations that support transfer to Delaware in its Opening Brief. ECF No. 10-1 at 18–21. Plaintiff ignores that the facts it points to in support of its opposition (ECF No. 16 at 24–26) were all within Plaintiff's control if not the direct result of Plaintiff's decisions, thereby undermining its assertion that it did not engage in forum shopping. That there were cases filed in New Jersey—just like the fact that the original cases were filed in Delaware—is the direct result of Plaintiff's strategy shifting, not because the center of gravity of the dispute changed. Indeed, it appears from the pleadings and litigation history

9

of the defendants in the other New Jersey cases that they could have been brought in Delaware,[2] further undermining Plaintiff's claim that the shift to New Jersey was anything other than tactical.

Moreover, Plaintiff's argument that this case should stay in the District of New Jersey because unrelated actions against different Defendants are "at the pleading stage" only supports Defendants' position. Transferring this case to the District of Delaware could make the resolution of the actions easier, more expeditious, and less expensive because this case can be worked into the parties' schedule there, where both Defendants *and* Plaintiff have already invested significant time finalizing a discovery order, protective order, and schedule. Denying transfer here would require all of that work to be re-done, effectively bringing the RADICAVA ORS® litigation—pending since 2023—back to square one. This factor weighs in favor or transfer.

### 2.    Public Factor 3: The Courts' Respective Caseloads Favors Transfer

Only focusing on patent caseloads, Plaintiff argues that this factor does not favor transfer. ECF No. 16 at 29. In doing so, Plaintiff minimizes the "substantial docket[]" that this Court manages. *Id.* While Plaintiff relies on *Personal Genomics Taiwan Inc. v. Pacific Biosciences of California Inc.*, No. 19-1810, 2024 WL 3043329 (D. Del. June 18, 2024) to support its argument, Plaintiff ignores that the court there also factored in the "weighted case filings per active judge" available to take on cases between the two fora. *Id.* at *4. Here, the weighted filings per judgeship is about 50 percent more in this District than in Delaware. *Compare* "Weighted Filings" of Ex. 1 to Reply Certification of Sarah Fehm Stewart at 14 (District of Delaware) and 15 (District of New

---

[2] The Zydus defendants involve foreign corporations and a U.S. agent located in New Jersey. ECF No. 1 at ¶¶ 14–16 C.A. No. 25-18032 (D.N.J.). The Sandoz defendant is a Delaware corporation. ECF No. 1 at ¶ 14, C.A. No. 25-16664 (D.N.J.). The Shanghai Auzone Defendants are foreign or Delaware corporations. *See, e.g.*, ECF No. 1 at ¶¶ 16–18, C.A. No. 25-16665 (D.N.J.). Additionally, Sandoz and Zydus have previously litigated ANDA matters in Delaware. *See, e.g.*, C.A. No. 25-cv-00509 (D. Del.) (Zydus) and C.A. No. 25-cv-00970 (D. Del.) (Sandoz).

Jersey). While both Districts manage significant dockets, the statistics make clear that this factor favors transfer.

### 3. Public Factors 4: There is no Strong Local Interest in Deciding this Case in New Jersey.

Plaintiff ignores the clear caselaw cited by Defendants from this Court finding that "[p]atent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum." *COA Network, Inc. v. J2 Glob. Commc'ns, Inc.*, No. 09-6505, 2010 WL 2539692, at *5 (D.N.J. June 17, 2010). Plaintiff's assertion that an uninvolved subsidiary in New Jersey creates "significant New Jersey connections," is a stretch. ECF No. 167 at 30. Plaintiff's cited case for this argument, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009), relies on *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), which presents a true case of "significant [forum] connections." ECF No. 16 at 30. There, where transfer to the Northern District of California was sought from a case pending in the Eastern District of Texas:

> …at least ten potential material witnesses, including two of the patent prosecution attorneys, reside in the Northern District, and at least four additional potential witnesses are residents of California. The petitioners further argued that all of their documents relating to the development and marketing of the accused infringing products were either in the proposed transferee jurisdiction or in San Diego...

566 F.3d at 1341. No such facts exist here: Defendants are not based in New Jersey, no evidence or actual events giving rise to the claims occurred in New Jersey, and, at most, one of ten inventors may reside in New Jersey. There are no significant connections here. This factor is neutral.

### 4. Public Factors 1, 5, and 6 are Neutral.

It is undisputed that public interest factors 1 (enforceability of the judgment), 5 (public policies of the fora), and 6 (familiarity of the trial judge with applicable state law in diversity cases) are neutral. ECF No. 16 at 31.

Given the foregoing, the balance of the *Jumara* factors strongly favors transfer. Defendants' motion to transfer is in the interests of justice and convenience for the parties and the Court. Defendants' motion should be granted.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant the motion to transfer this case to the District of Delaware.

Dated: December 8, 2025

Respectfully submitted,

By: /s/ Sarah Fehm Stewart
Sarah Fehm Stewart
Duane Morris LLP
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 424-2061
sfstewart@duanemorris.com

Deepro R. Mukerjee (*pro hac vice* forthcoming)
Lance A. Soderstrom (*pro hac vice* forthcoming)
Christopher B. Prescott (*pro hac vice* forthcoming)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8800
deepro.mukerjee@katten.com
lance.soderstrom@katten.com
christopher.prescott@katten.com

Joseph M. Janusz (*pro hac vice* forthcoming)
KATTEN MUCHIN ROSENMAN LLP
615 S. College Street, Suite 1700
Charlotte, NC 28202-3354
Telephone: (704) 444-2000
joseph.janusz@katten.com

*Attorneys for Defendants*
*Apotex Inc. and Apotex Corp.*

12